### The STATE of Ohio

v.

### WARREN.

Court of Common Pleas of Ohio,
Lucas County.

No. CR80–6914.

Decided March 26, 1997.

*Julia Bates*, Lucas County Prosecuting Attorney, and *Craig T. Pearson*, Assistant Prosecuting Attorney, for plaintiff.

*Joan Hausknecht*, for defendant.

---

FREDERICK H. MCDONALD, Judge.

This case is before the court on Ralph D. Warren's petition for postconviction relief filed pursuant to R.C. 2953.21. The state of Ohio has filed a memorandum in opposition to Warren's petition for postconviction relief. For the reasons that follow, I find that Warren's motion for postconviction relief should be denied.

## I. FINDINGS OF FACT

1. On November 26, 1980, Warren was indicted in Lucas County on one count of aggravated trafficking in cocaine in violation of R.C. 2925.03(A)(1).

2. Warren was represented at trial by attorney Terry Jones.

3. On May 28, 1981, a jury found Warren guilty of aggravated trafficking.

4. On July 22, 1981, Warren was sentenced by the court to incarceration for a period of eighteen months to ten years. The court, however, suspended the

sentence and placed Warren on probation for two years upon the condition that he serve thirty days at the Lucas County Correctional Center.

5. Warren was notified by the court at sentencing of his right to appeal his conviction. However, no direct appeal was ever filed by Warren.

6. A portion of the court reporter's notes for the 1981 aggravated drug trafficking case was accidentally destroyed, along with other notes taken in other cases, by water in the basement of the Lucas County Court of Common Pleas and, therefore, is unavailable for transcription and review by this court.

7. In 1986, Warren pled guilty to drug abuse in this court. The 1981 conviction was used to raise the drug abuse offense from a first-degree misdemeanor to a felony.

8. In 1991, Warren was convicted of various offenses in the Federal District Court for the Northern District of Ohio. The 1981 and 1986 convictions were used to enhance Warren's federal sentence.

9. On November 7, 1994, Warren filed a petition for postconviction relief pursuant to R.C. 2953.21, alleging ineffective assistance of counsel in the 1981 aggravated drug trafficking case.

10. In an August 14, 1996 opinion and judgment entry, Warren was granted an evidentiary hearing on the issue of whether his attorney's failure to interview or subpoena a witness constituted ineffective assistance of counsel. The defense of laches was also an issue at the hearing. The state was granted summary judgment on all remaining issues in Warren's petition for postconviction relief.

11. On October 10, 1996, an evidentiary hearing was ultimately held and testimony was presented on the issue of ineffective assistance of counsel and the defense of laches. Both Warren and the state were ordered to submit post-hearing briefs.

## II. CONCLUSIONS OF LAW

In support of his petition for postconviction relief, Warren argues that his Sixth Amendment right to effective counsel was violated when his attorney failed to interview and subpoena his brother, Charles Warren, as a witness for his 1981 trial. The state, however, counters that Warren has not met his burden of establishing that his attorney's refusal to interview or subpoena Charles constitutes ineffective assistance of counsel. The state further argues that it has established that Warren's petition for postconviction relief should be barred by the defense of laches.

A. Ineffective Assistance of Counsel

The Ohio Supreme Court in *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph two of syllabus, rehearing denied (1989), 43 Ohio St.3d 712, 541 N.E.2d 78, certiorari denied (1990), 497 U.S. 1011, 110 S.Ct. 3258, 111 L.Ed.2d 768, rehearing denied (1990), 497 U.S. 1050, 111 S.Ct. 16, 111 L.Ed.2d 830, applied a two-prong test announced by the United States Supreme Court in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, rehearing denied, 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864, for determining ineffective assistance of counsel. In *Bradley,* the court held:

"Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance. (*State v. Lytle* [1976], 48 Ohio St.2d 391, 2 O.O.3d 495, 358 N.E.2d 623; *Strickland v. Washington* [1984], 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, followed.)" *Id.* at paragraph two of the syllabus.

In order to satisfy the prejudice requirement, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would be different." *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698. The United States Supreme Court defines a reasonable probability as "a probability sufficient to undermine confidence in the outcome." *Id.* Both prongs of the *Strickland* test (counsel's performance falling below reasonable representation and prejudice) must be met in order to deem counsel ineffective. *Id.*

Additionally, there is a presumption in Ohio that a licensed attorney is competent, and, as a result of this presumption, the petitioner must prove that counsel was ineffective. *State v. Pattin* (Aug. 7, 1992), Lucas App. No. L–91–339, unreported, 1992 WL 185664, citing *State v. Hamblin* (1988), 37 Ohio St.3d 153, 155–156, 524 N.E.2d 476, 478–480, certiorari denied (1988), 488 U.S. 975, 109 S.Ct. 515, 102 L.Ed.2d 550, rehearing denied (1989), 488 U.S. 1051, 109 S.Ct. 886, 102 L.Ed.2d 1008. Furthermore, there is also a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Bradley,* 42 Ohio St.3d at 142, 538 N.E.2d at 380. An attorney has a "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland,* 466 U.S. at 691, 104 S.Ct. at 2066, 80 L.Ed.2d at 695. When a decision not to investigate is made by an attorney, that decision must be "directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id.*

Warren alleges that his attorney's refusal to interview or subpoena his brother Charles as a witness for his 1981 trial constitutes ineffective assistance of counsel.

Specifically, Warren contends that his attorney's refusal to interview his brother Charles based on the belief that Charles would lie for Warren violates the duty to make reasonable investigations. Warren also contends that his attorney's refusal to listen to Charles was not based on any "reasonable decision that makes particular investigations unnecessary." Additionally, Warren contends that he was prejudiced by his attorney's alleged ineffectiveness, since Charles's testimony would have assisted in his defense.

The state counters that Warren has not met his burden in establishing that his attorney's decision not to interview or subpoena Charles was anything more than a well-considered trial tactic. The state further argues that even assuming *arguendo* that Warren's decision not to interview Charles was a failure of representation, Warren has failed to satisfy the second prong of the *Strickland* test, since he has not established that there is a reasonable probability that the outcome of the trial would have been different. The state, thus, argues that Warren was not prejudiced by his attorney's alleged failure to interview or subpoena Charles, since any testimony presented by Charles would have yielded the same trial result.

The state's arguments are well taken. Warren has not proven that the actions of his attorney constitute ineffective assistance of counsel. Warren's attorney, Jones, testified at the hearing that he did not interview Charles because he assumed that he would lie. Jones also testified that he knew Warren well and that he has represented other members of the Warren family. In addition, throughout the hearing, Jones referred to Charles as "Chuckie," thereby indicating that he knew Charles in some sort of personal capacity. Warren's argument that Jones's refusal to interview Charles was not based on any "reasonable decision that makes particular investigations unnecessary" is without merit. Warren has failed to prove that Jones's refusal to interview Charles was not a tactical decision or a reasonable decision based on Jones's personal knowledge and relationship with the family members, including Charles. See *State v. Whittaker* (Jan. 23, 1986), Cuyahoga App. No. 49982, unreported, 1986 WL 1069 (stating that it is not a failure of representation if counsel excludes alibi evidence because he believes that it is perjurious).[1]

---

1. Warren contends that Jones concedes that he was ineffective by stating that he was found ineffective in another case, *State v. Winston*, when he failed to interview the defendant's witness. A review of that case indicates that Jones, in addition to failing to interview and subpoena an alibi witness, also failed to file (1) a motion for discovery, (2) a motion to suppress evidence, and (3) a motion to dismiss one count of the indictment. *State v. Winston* (June 12, 1981), Lucas App. No. 80–223, unreported, 1981 WL 5645. Jones also failed to file an appellate brief, causing the appeal to be dismissed. *Winston, supra.* The court of appeals

Moreover, the "Clerk's Case Record" further reveals that Jones, in addition to calling Warren to testify, called two alibi witnesses, Reginald Warren and Lorainne Foster, to also testify on Warren's behalf. (See, also, Warren's statement of evidence contained in his amended petition filed January 30, 1995, at paragraphs 9 and 10.) The record also indicates that Jones filed a motion for continuance in order to locate Lorainne Foster as a witness so that he could properly defend his client, Warren. Jones also filed a bill of particulars and a demand for discovery. After a guilty verdict was returned, the jury was polled at Jones's request. Thus, the record further supports the state's contention that Jones provided Warren with effective assistance of counsel.

■ Assuming *arguendo* that Jones's failure to interview Charles violated his duty to make reasonable investigations and thus satisfied the first prong of the *Strickland* test, Warren is still not entitled to postconviction relief because he has failed to satisfy the second prong of the *Strickland* test, *i.e.*, he has not demonstrated with reasonable probability that the outcome of the trial would have been different. Warren fails to satisfy this prong for two reasons.

■ First, if Charles Warren had been called as a witness at the trial, his testimony would only have corroborated the testimony of other witnesses. The state presented testimony from Agent Arcudy that he purchased cocaine from petitioner at a party at petitioner's residence. The defense was alibi. Reggie Warren testified that he drove petitioner to Lorainne Foster's house. Lorainne Forster testified that the petitioner was at her house at the time of the drug sale. The testimony of Charles Warren, the potential witness who was not called, would have been that he, Charles Warren, was at the party where the cocaine was allegedly sold, but that petitioner was not there. The testimony of Charles Warren was thus cumulative and corroborated the alibi testimony of the two defense witness at trial. A failure to call a witness is not prejudicial if the testimony of the witness is merely corroborative. *Middletown v. Allen* (1989), 63 Ohio App.3d 443, 448, 579 N.E.2d 254, 257, citing *State v. Warden* (1986), 33 Ohio App.3d 87, 514 N.E.2d 883.

Second, Warren has failed to prove that Charles's testimony would have changed the outcome of the trial, since a review of the testimony elicited at the hearing on October 10, 1996 reveals that Charles was not a credible witness. When Charles was questioned about the details of the party that resulted in the arrest and conviction of Warren, he stated that the reason he remembered the date of the party was because it was a significant day—the day his brother was wrongfully accused of a crime. Charles further stated that while he remembered

stated that the "cumulation of this evidence clearly indicates that defense counsel substantially violated essential duties to his client." *Id.* In the instant case, however, Jones filed pertinent motions, including one for discovery.

14

the *date* of the party, he did not remember the actual *day* of the party. While Charles contends that, because of the party's significance, he remembers the date and the details of the party, the arrest resulting from the activity at the party occurred several months afterwards. Since Charles was not aware on the day of the party that Warren would be arrested several months later, Charles's testimony that the day was significant is not credible. In addition, Charles was unable to recall significant events in his own life, such as the dates and years of his own arrests, rendering it doubtful that he would remember such dates in his brother's life. Finally, the fact that Charles Warren and petitioner were brothers provides an additional reason to question the credibility of Charles Warren.

Charles also testified that while he was aware that his brother was arrested, the only person that he informed about the alleged misidentification was his mother and that neither he nor she contacted the police regarding this crucial information about his brother. Charles's only attempt to reveal this information occurred approximately thirteen years later, when Warren filed his petition for postconviction relief alleging ineffective assistance of counsel and providing in support an affidavit that Warren typed for Charles to review and sign. Thus, it is clear that due to the problems concerning Charles's credibility, there is not a reasonable probability that his testimony would have changed the outcome of the trial. Therefore, Warren has not suffered any prejudice from Jones's failure to call Charles as a witness.

B. Laches

The state contends that the equitable defense of laches bars Warren's petition for postconviction relief. The state's contention is well taken. "Laches" is defined as "an omission to assert a right for an unreasonable and unexplained length of time, under circumstances prejudicial to the adverse party." *Connin v. Bailey* (1984), 15 Ohio St.3d 34, 35, 15 OBR 134, 135, 472 N.E.2d 328, 329; *Papenhagen v. Papenhagen* (Nov. 21, 1986), Lucas App. No. L–85–446, unreported, 1986 WL 13181. A party, upon asserting a laches defense, must prove "(1) unreasonable delay or lapse of time in asserting a right, (2) absence of an excuse for the delay, (3) knowledge, actual or constructive, of the injury or wrong, and (4) prejudice to the other party." *State ex rel. Meyers v. Columbus* (1995), 71 Ohio St.3d 603, 605, 646 N.E.2d 173, 174.

In *Baxter v. Estelle* (C.A.5, 1980), 614 F.2d 1030, certiorari denied, 449 U.S. 1085, 101 S.Ct. 873, 66 L.Ed.2d 810, rehearing denied (1980), 622 F.2d 1043, certiorari denied (1981), 449 U.S. 1085, 101 S.Ct. 873, 66 L.Ed.2d 810, the doctrine of laches was applied to a case attacking a prior conviction. In *Baxter*, the petitioner waited fifteen years after he was convicted before alleging that he was denied effective assistance of counsel. The *Baxter* court, upon applying the

equitable doctrine of laches, held that the petitioner was precluded from raising his claims.

Warren argues that he did not seek postconviction relief earlier because "there was no reason to." Warren further asserts that "he was not prejudiced in any meaningful way" and suffered no significant prejudice until his federal conviction and sentencing. These arguments are unpersuasive. Warren was prejudiced when he was found guilty of aggravated trafficking, was placed on probation, and served jail time as a direct result of the conviction. In addition, Warren was prejudiced in 1986 when he pled guilty to drug abuse, since his 1981 conviction raised the drug abuse offense from a misdemeanor to a felony. Thus, while Warren argues that he was not substantially prejudiced as a result of his conviction, the court finds that Warren was, in fact, prejudiced when he was convicted and sentenced in 1981 and again in 1986 when his 1981 conviction was used to raise his drug abuse charge from a misdemeanor to a felony. Therefore, Warren's logic that he had "no reason to make a fuss" does not constitute a valid excuse for his thirteen-year delay in asserting his right to relief. Similar to the petitioner in *Baxter*, Warren has knowingly sat on his rights to postconviction relief for thirteen years. See *State v. Goudy* (Sept. 20, 1993), Coshocton App. Nos. 93–CA–9 and 93–CA–11, unreported, 1993 WL 385349 ("Even before [the] use [of the conviction] in 1987 for enhancement purposes, [the conviction] was a serious impairment which appellant would have done well to challenge.").

In addition, because of Warren's lengthy delay, the state is prejudiced in its ability to respond to Warren's claim of receiving ineffective assistance of counsel for numerous reasons. First, Warren's attorney, Jones, testified at the hearing that he could not recall the specifics of the case. Thus, the state was unable to elicit testimony from Jones concerning whether his failure to interview or subpoena Charles as a witness was a tactical decision. Second, the transcript may have been available for a full review enabling the state to establish that the testimony of Charles was purely cumulative and that the absence of that testimony did not affect the outcome of the trial. Third, due to the thirteen-year delay, the state is unable to determine what additional evidence, apart from Agent Arcudy's testimony, was offered by the prosecution at the original trial.

The court finds that the state has proven each of the elements for a laches defense to succeed. First, thirteen years is an unreasonable length of time for the petitioner to sit on his rights. See *Baxter, supra.* Second, the petitioner has no excuse for the delay, since he was prejudiced in 1981 by the alleged ineffective assistance of counsel. Although his 1981 conviction may have had more of a substantial impact on his freedom as a result of his 1991 conviction, that is no excuse for failing to assert his right to effective assistance of counsel for thirteen years. Third, Warren was present during his 1981 trial and would have knowl-

edge, either actual or constructive, that his rights had been violated. Fourth, the state is prejudiced by Warren's delay in bringing his motion for postconviction relief. Accordingly, the equitable doctrine of laches bars Warren from asserting this alleged error of ineffective assistance of counsel at this late stage.

It is ordered that the petition for postconviction relief filed by the petitioner is denied.

*Judgment accordingly.*